IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

STEPHEN P. McDONALD,

          Plaintiff,

    vs.                                    **Case No. 08-4092-RDR**

CITY OF SCRANTON, KANSAS;
COUNCILMAN PHIL PARSONS;
RAY LESTER, JR.; and GARY
BURKDOLL, individually
and in their official
capacities,

          Defendants.

_____

## MEMORANDUM AND ORDER

Plaintiff is the former chief of police of the City of Scranton, Kansas. Plaintiff raises federal and state law claims arising from the end of his employment as chief of police. Defendants are the City of Scranton, Kansas and three city councilmen, Phil Parsons, Ray Lester, Jr., and Gary Burkdoll.

This case is before the court upon defendants' motion for summary judgment. After careful review, the court has determined that defendants are entitled to summary judgment as to plaintiff's federal claims. The court declines to exercise supplemental jurisdiction over the remaining state law claims.

### Summary judgment standards

Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The movant

has the burden to "demonstrate an absence of a genuine issue of material fact given the relevant substantive law." Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir.) cert. denied, 506 U.S. 1013 (1992).  The court reviews the evidence and draws all reasonable inferences in the light most favorable to the nonmovant.  Thomas v. International Business Machines, 48 F.3d 478, 484 (10th Cir. 1995).  Summary judgment shall be granted unless there is evidence upon which a reasonable jury could find for the nonmovant.  Panis v. Mission Hills Bank, N.A., 60 F.3d 1486, 1490 (10th Cir. 1995) cert. denied, 516 U.S. 1160 (1996).  Conclusory allegations will not create a genuine issue of material fact defeating a summary judgment motion.  White v. York Int'l Corp., 45 F.3d 357, 363 (10th Cir. 1995).

Uncontroverted facts

The City of Scranton, Kansas is a city of the third class operating under the mayor/council form of government.  Under § 1-301 of the city code, the mayor "by and with the consent of the [city] council" appoints the chief of police yearly at the first regular meeting in May.  The chief of police holds the office until a successor has been appointed and qualified.  The section specifically provides:

> APPOINTMENT. At the first regular meeting in May of each year the mayor, by and with the consent of the council, shall appoint a city clerk and city treasurer, and may appoint a . . . chief of police . . .  Such officers shall hold their respective offices until their successors have been appointed and qualified.

2

Under § 1-303 of the code, a majority of all members of the city council may remove any appointed officer, but no officer or employee shall be removed for any reason until he or she has been given notice and afforded the opportunity for a hearing.

Plaintiff was appointed chief of police of the City of Scranton on September 5, 2002. He replaced a chief of police who had not been reappointed. Plaintiff was not told or promised how long he would remain in the position. Plaintiff was reappointed chief of police on May 20, 2003, May 4, 2004, and May 3, 2005. These were one-year appointments.

On May 16, 2006, the mayor recommended that plaintiff be reappointed as chief of police. A motion to approve reappointment failed on a 2 to 3 vote. The city council members who voted against plaintiff's reappointment were Phil Parsons, Ray Lester, Jr., and Gary Burkdoll. Plaintiff was not present when the vote was taken.

Plaintiff later joined the meeting and participated in an executive session. He was told that he had not been reappointed but that he was still chief of police. According to plaintiff, Phil Parsons stated that numerous complaints about plaintiff had been received and that plaintiff had not adapted to the small town mentality. During executive session and at any other time, the alleged complaints against plaintiff were not described to him and he received no other criticism regarding his performance.

Some people had complained that plaintiff attempted to enforce city nuisance ordinances.  One citizen complained about plaintiff's demeanor during a traffic stop.  Another complained that he was harassed by plaintiff.  Plaintiff had cited four city councilmen and the city's mayor for nuisance code violations.  Plaintiff believes he was not reappointed because he attempted to enforce the nuisance ordinances against city council members and others.

The city council had instructed plaintiff to enforce the nuisance ordinances.  He took an oath to equally enforce the laws. Plaintiff was given a merit pay increase two weeks before the vote against reappointment.  Plaintiff received no disciplinary actions during his employment.

Despite the vote against reappointment, plaintiff was still the chief of police until a new person was found and appointed as chief.  After the city council's vote against reappointment, a city council member told plaintiff not to be upset, that it would blow over, and that he was still chief of police.  Plaintiff knew it was possible that the mayor, who was in favor of plaintiff's reappointment, would not appoint a new chief of police and that plaintiff would serve in the position indefinitely.  A city clerk had kept her position for more than a year without being reappointed.

Not long after the May 16, 2006 vote against reappointment,

4

plaintiff accepted a position with the Sheriff of Osage County, Kansas.   On May 23, 2006, plaintiff submitted a letter of resignation to the mayor of Scranton.   The letter was drafted by plaintiff's attorney and copied to the city council members and local newspapers.   The letter described plaintiff's resignation as "involuntary" and claimed that he was effectively terminated and removed from office without having been given notice and afforded an opportunity for a hearing.

Plaintiff did not request a hearing to challenge the reasons stated in executive session for the vote against reappointment, and none was conducted.   Although the City's personnel manual provided plaintiff with the right to grieve the city council's decision, he chose not to do so.   Plaintiff contends that his letter of resignation, which alleged retaliatory and improper actions, should have prompted a hearing.   No vote was taken to remove plaintiff as chief of police.

Plaintiff has held various law enforcement jobs since leaving the chief of police job at Scranton.   Plaintiff is currently working full time as a police officer for the Veterans Administration in Topeka, Kansas.   He has had that position since September 6, 2006.

<u>Discharge or constructive discharge</u>

Defendants contend that summary judgment is warranted against all of plaintiff's claims because plaintiff was not discharged or

constructively discharged from his position as chief of police.
Plaintiff asserts that he was constructively discharged from the
job.

The Tenth Circuit set out the standards for a constructive
discharge in <u>E.E.O.C. v. PVNF, L.L.C.</u>, 487 F.3d 790, 805-06 (10th
Cir. 2007) (emphasis added):

> "Constructive discharge occurs when the employer by its
> illegal discriminatory acts has made working conditions
> so difficult that a reasonable person in the employee's
> position <u>would feel compelled to resign</u>." <u>Sandoval v.</u>
> <u>City of Boulder</u>, 388 F.3d 1312, 1325 (10th Cir. 2004)
> (quotations omitted).  In evaluating whether the
> employee's working conditions would cause such a feeling
> in a reasonable person, "we apply an objective test under
> which neither the employee's subjective views of the
> situation, nor her employer's subjective intent . . . are
> relevant." <u>Tran v. Trs. of State Colls. in Colo.</u>, 355
> F.3d 1263, 1270 (10th Cir. 2004).  The plaintiff's burden
> in a constructive discharge case is substantial and
> showing that the employer's conduct meets the definition
> of "tangible employment action" or "adverse employment
> action" is "not necessarily sufficient to establish a
> constructive discharge because <u>a constructive discharge</u>
> <u>requires a showing that the working conditions imposed by</u>
> <u>the employer are not only tangible or adverse, but</u>
> <u>intolerable</u>." <u>Id.</u> at 1270-71; <u>see also</u> <u>Penn. State</u>
> <u>Police v. Suders</u>, 542 U.S. 129, 147, 124 S.Ct. 2342, 159
> L.Ed.2d 204 (2004) ("A hostile-environment constructive
> discharge claim entails something more [than conduct that
> amounts to actionable harassment]: A plaintiff who
> advances such a compound claim must show working
> conditions so intolerable that a reasonable person would
> have felt compelled to resign."); <u>Garrett v. Hewlett-</u>
> <u>Packard Co.</u>, 305 F.3d 1210, 1221 (10th Cir. 2002)
> (stating that "[t]he bar is quite high in such cases").
> Importantly, in constructive discharge cases "[t]he
> question is not whether the employee's resignation
> resulted from the employer's actions, but whether the
> employee <u>had any other reasonable choice but to resign</u> in
> light of those actions." <u>Tran</u>, 355 F.3d at 1270.

Plaintiff does not disagree with this recitation of the

constructive discharge standards.  Plaintiff summarizes his claim

of constructive discharge on page 14 of his response to defendants'

summary judgment motion:

> Although McDonald knew pursuant to city ordinance he
> would remain as Chief of Police until a new Chief was
> appointed, it was not tolerable to continue [to] work in
> an environment that would not allow him to equally
> enforce the laws.  It was not tolerable to work in an
> environment that falsely accused him of "numerous
> complaints" and expected preferential treatment as part
> of the "small town mentality."  It was not tolerable to
> continue to work in such an environment being aware you
> were going to be replaced without notice at some point.
> McDonald was compelled to resign and find work to support
> his family.  McDonald was faced with continuing to work
> in a completely intolerable working environment which
> expected him to not enforce the laws equally until his
> successor was appointed.  Such working conditions would
> easily be considered intolerable by a reasonable person.

Doc. No. 30.

The court disagrees with this position.  A reasonable person

would not find that plaintiff's assertions, in the context of the

uncontroverted facts, support a claim of constructive discharge.

Plaintiff obviously believed that he was unfairly criticized

or evaluated by the city council.  This is not sufficient to show

a constructive discharge.  <u>Breeding v. Arthur J. Gallagher & Co.</u>,

164 F.3d 1151, 1160 (8th Cir. 1999); see also <u>PVNF</u>, 487 F.3d at 794-

96 & 805-06 (repeated sexually explicit and derogatory remarks is

insufficient for constructive discharge).  Plaintiff believed he

lost the reappointment vote because he tried to enforce the law

equally.  The Tenth Circuit has held that victims of discriminatory

acts may not necessarily have proof of a constructive discharge.

See <u>Fischer v. Forestwood Co, Inc.</u>, 525 F.3d 972, 982 (10th Cir. 2008) (discriminatory treatment of plaintiff and others does not necessarily show constructive discharge). If being victimized by discrimination does not necessarily establish a constructive discharge, we believe an inference that one must enforce the law in a selective fashion also is not sufficient to prove a constructive discharge. The manner and means of enforcing the multitude of laws in this country is a constant source of debate. There is always disagreement within the law enforcement community and outside that community regarding how best to enforce the law. The court is not saying that plaintiff was right or wrong in his feelings that he was unfairly treated. The court is only saying that his disagreement with what he perceived to be the philosophy of the city council is not something which would make working conditions intolerable and thereby compel a resignation. See <u>Exum v. United States Olympic Committee</u>, 389 F.3d 1130, 1135-36 (10th Cir. 2004) (being given an unethical order is not sufficient to prove constructive discharge); <u>Yearous v. Niobrara County Memorial Hospital</u>, 128 F.3d 1351, 1357 (10th Cir.) <u>cert. denied</u>, 523 U.S. 1074 (1997) (same). Finally, the threat of being replaced "without notice at some point" is also insufficient to establish a constructive discharge. <u>Parker v. Board of Regents</u>, 981 F.2d 1159, 1162 (10th Cir. 1992) (offering an employee a choice between resignation and termination does not make resignation involuntary);

8

see also <u>Lighton v. University of Utah</u>, 209 F.3d 1213, 1222 (10th Cir. 2000) (resignation was not made involuntary when plaintiff was given choice of signing settlement agreement of sexual harassment charge or facing a disciplinary proceeding to adjudicate the charge which could possibly lead to termination).

In summary, it may have been unpleasant for plaintiff to continue working as the chief of police when he felt that he was at serious risk of being replaced merely because he tried to equally enforce the nuisance codes.  But, it was not objectively intolerable.

<u>Property interest</u>

Plaintiff contends that he had a property interest in continued employment as chief of police and that he was deprived of this property interest without the due process required by the Constitution.  This argument fails because plaintiff resigned as chief of police.  He did not lose the job because of the action of a governmental entity.  <u>Parker</u>, 981 F.2d at 1162-63.

Plaintiff's contention also fails because, as an officer who had not been reappointed, plaintiff was serving as an at-will employee until a successor was appointed.  Under Kansas law, public employment is considered terminable at will in the absence of an express or implied contract covering the duration of the employment.  <u>Crowley v. City of Burlingame</u>, 352 F.Supp.2d 1176, 1181-82 (D.Kan. 2005).  We agree with defendants that the relevant

sections of the city code do not support a specific duration of employment after the expiration of the appointed term.  See <u>Elam v. Williams</u>, 753 F.Supp. 1530, 1537 (D.Kan. 1990) (serving until a successor is politically appointed is not a term of specific duration).  Plaintiff cites <u>Crowley</u> for the proposition that the Scranton city ordinances created a property interest in the appointed position of chief of police.  However, <u>Crowley</u> concerns different language in a different city's code.  It is distinguishable on that basis.  Plaintiff also cites Scranton's city code § 1-303(d), where it states:  "No officer or employee shall be removed for any reason until he or she has been given notice and afforded the opportunity for a hearing."  We reject this argument because a provision in a statute or code which provides only for an opportunity for a hearing does not establish a property interest in a job.  <u>Moulton v. Vigo County</u>, 150 F.3d 801, 805 (7th Cir. 1998) (a mere right to notice and a hearing before termination does not establish a property interest in a job); <u>Lyznicki v. Board of Education</u>, 707 F.2d 949, 952 (7th Cir. 1983) (same); <u>Brown v. Board of Education</u>, 928 P.2d 57, 67 (Kan. 1996) (applying <u>Lyznicki</u> holding to statute conferring a right to hearing to school administrators).

<u>Liberty interest</u>

Governmental action which defames an individual in the course of declining to rehire him can entitle the person to due process

10

protections.  <u>Board of Regents v. Roth</u>, 408 U.S. 564, 573 (1972).
Plaintiff claims that his liberty interest in his good name and
reputation as it affects his interest in employment was damaged by
city council statements that he was not being reappointed because
of "numerous complaints" against him and that he had not grasped or
adapted to the "small town mentality."  Doc. No. 30 at p. 16.

To establish a liberty interest violation, plaintiff must
demonstrate:  1) that statements were made which impugn his good
name, reputation, honor or integrity; 2) that the statements were
false; 3) that the statements occurred in the course of terminating
plaintiff or foreclose other employment opportunities; and 4) that
the statements were published.  <u>Workman v. Jordan</u>, 32 F.3d 475, 481
(10th Cir. 1994) <u>cert. denied</u>, 514 U.S. 1015 (1995).  The court
determines whether a statement impugns a person's good name,
reputation, honor or integrity; or, in other words, whether it is
"stigmatizing."  <u>Palmer v. City of Monticello</u>, 31 F.3d 1499, 1503
n. 2 (10th Cir. 1994).

The statements in question do not impugn plaintiff's good
name, reputation, honor or integrity.  "Numerous complaints" may be
received because a police officer is doing his job.  The actual
enforcement of the law usually makes someone unhappy.  There is
nothing in the statement to indicate that the complaints were
justified or that the complaints were relevant to plaintiff's
honesty, integrity or good name.  A failure to grasp the "small

town mentality" also has nothing to do with a person's good name,
reputation, honor or integrity. Neither statement is
"stigmatizing" for the purposes of liberty interest analysis. See
Hicks v. City of Watonga, 942 F.2d 737, 746 (10th Cir. 1991)
(charges must implicate dishonesty or immorality in order to state
a constitutional claim); Sullivan v. Stark, 808 F.2d 737, 739 (10th
Cir. 1987) (complaints of neglect or dereliction of duty do not
implicate liberty interest); Bailey v. Kirk, 777 F.2d 567, 572-73
(10th Cir. 1985) (discharge of police chief for failure to properly
conduct an investigation is not stigmatizing); Brammer-Hoelter v.
Twin Peaks Charter Academy, 81 F.Supp.2d 1090, 1095 (D.Colo. 2000)
(reference to "just cause" for termination and "unfortunate
problems" and bringing school back "some normalcy" are not
stigmatizing); Jones v. City of Topeka, 764 F.Supp. 1423, 1431
(D.Kan. 1991) (liberty is not infringed by denigrating a public
employee's competence).

The Tenth Circuit has also stated frequently that the concept
of liberty recognizes two particular interests of a public
employee: 1) the protection of his good name, reputation, honor
and integrity, and 2) his freedom to take advantage of other
employment opportunities. Miller v. City of Mission, 705 F.2d 368,
373 (10th Cir. 1983). In this case, it is undisputed that plaintiff
had secured law enforcement employment before he resigned and has
continued to maintain law enforcement employment. His freedom to

take advantage of other employment opportunities has not been infringed.

For the above-stated reasons, the court shall grant summary judgment against plaintiff's claimed violation of his liberty interest.

<u>Conspiracy</u>

Plaintiff alleges a conspiracy to violate his constitutional rights. For the above-stated reasons, plaintiff cannot establish that his constitutional rights were violated. Therefore, the conspiracy claim must be dismissed.

<u>Supplemental jurisdiction</u>

In addition to his federal claims, plaintiff asserts state law claims of illegal retaliatory discharge. The court may exercise supplemental jurisdiction over state law claims if they sufficiently relate to a pending claim over which the court has original jurisdiction. See 28 U.S.C. § 1367(a). The court need not exercise supplemental jurisdiction, however, and it may decline to do so if it has dismissed all the claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). Here, the court shall dismiss all of plaintiff's federal claims and has no independent jurisdictional basis over plaintiff's remaining state law claims.

Under the similar doctrine of pendent jurisdiction, the Supreme Court indicated that the normal course for courts should be

13

to decline to decide state law claims.  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state law claims." Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n. 7 (1988).  The Tenth Circuit echoed these comments in Ball v. Renner, 54 F.3d 664, 669 (10th Cir. 1995): "[T]he most common response to a pretrial disposition of federal claims has been to dismiss the state law claim or claims without prejudice . . . . 'Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary.'"  Quoting, Thatcher Enterprises v. Cache County Corp., 902 F.2d 1472, 1478 (10th Cir. 1990).

Upon review of the factors recommended for the court's consideration, the court shall decline to exercise supplemental jurisdiction over plaintiff's state law claims.  Those claims involve questions of state law which in the interests of comity should be decided by a state court. See Satterlee v. Allen Press, Inc., 455 F.Supp.2d 1236, 1257 (D.Kan. 2006) (declining to exercise supplemental jurisdiction over state law retaliation claim).

Conclusion

Consistent with the above-stated comments, defendants' motion for summary judgment shall be granted.

14

**IT IS SO ORDERED.**

Dated this 31st day of August, 2009 at Topeka, Kansas.


                              s/Richard D. Rogers
                              United States District Judge